IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**WILDEARTH GUARDIANS,**

  **Plaintiff,**

vs.             No. 1:14-CV-0666 RB/SCY

**UNITED STATES BUREAU OF
RECLAMATION and UNITED STATES
ARMY CORPS OF ENGINEERS,**

  **Defendants,**

**and**

**MIDDLE RIO GRANDE CONSERVANCY
DISTRICT,**

  **Intervenor-Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the Federal Defendants' Revised Motion to Dismiss Plaintiff's Claims Against the U.S. Army Corps of Engineers. (Doc. 43) The Court's jurisdiction arises under 28 U.S.C. § 1331. Having reviewed the parties' submissions and the relevant law, and being otherwise fully advised, the Court denies this motion.

**I. Introduction**

Plaintiff is a non-profit environmental advocacy and conservation organization based in Santa Fe, New Mexico. (Doc. 66.) In this action, Plaintiff seeks to restore water flows in the Rio Grande River to protect and conserve the Rio Grande silvery minnow and the southwestern willow flycatcher. (*Id.*) Plaintiff alleges that Defendant United States Bureau of Reclamation and Defendant United States Army Corps of Engineers (collectively "Federal Defendants")

violated the substantive and procedural requirements of Sections 7(a)(2), 7(d) and 9 of the Endangered Species Act.  (Doc. 66.)  More specifically, in the Third Amended Complaint,[1] Plaintiff alleges that (1) the Federal Defendants' operations and activities on the Middle Rio Grande jeopardize the Rio Grande silvery minnow and the southwestern willow flycatcher, and also adversely modify the species' designated critical habitats, in violation of the substantive requirements of Section 7(a)(2) of the Endangered Species Act; (2) the Federal Defendants' failure to consult with the Fish and Wildlife Service over operations and activities in the Middle Rio Grande constitutes a violation of the procedural requirements of Section 7(a)(2) of the Endangered Species Act; (3) the Bureau of Reclamation's operations and activities on the Middle Rio Grande during the on-going consultation with the Fish and Wildlife Service adversely affect the Rio Grande silvery minnow and southwestern willow flycatcher in violation of Section 7(d) of the Endangered Species Act; and (4) the Federal Defendants' operations and activities in the Middle Rio Grande violate Section 9 of the Endangered Species Act.  (Doc. 66.)

The Federal Defendants move to dismiss the claims against Defendant Army Corps of Engineers on the grounds that Plaintiff has not shown that Defendant Army Corps of Engineers proposes to authorize, fund, or carry out an action; and Plaintiff has not shown that the agency has sufficient discretionary authority to modify the action to benefit endangered species.  (Doc. 43.)  Plaintiff opposes the motion.

## II.     The Rio Grande Silvery Minnow

On July 20, 1994, the United States Fish and Wildlife Service listed the Rio Grande silvery minnow as endangered under the Endangered Species Act, 16 U.S.C. § 1531. *See* Final Rule to List the Rio Grande Silvery Minnow as an Endangered Species, 59 Fed.Reg. 36988 (July

---

[1] The Third Amended Complaint is entitled "Second Amended Complaint." (Doc. 66.)  Four complaints have been filed in this matter.  (Docs. 1, 23, 38, and 66.)

20, 1994). The Rio Grande silvery minnow was historically one of the most abundant species of fish in the Rio Grande watershed system, occurring from Espanola, New Mexico, to the Gulf of Mexico. *Id.* It was also found in the Pecos River, a major tributary of the Rio Grande, from Santa Rosa, New Mexico, downstream to its confluence with the Rio Grande in south Texas. *Id.* By July 1994, the Rio Grande silvery minnow was found only in the Middle Rio Grande from Cochiti Dam downstream to the headwaters of Elephant Butte Reservoir, New Mexico, which represented about five percent of its historic range. *Id.* According to the Fish and Wildlife Service's findings, threats to the species include dewatering, channelization and regulation of river flow to provide water for irrigation; diminished water quality caused by municipal, industrial, and agricultural discharges; and competition with non-native fish species. *Id.*

The Rio Grande silvery minnow is pictured here:



*See* http://www.nature.nps.gov/water/fisheries/DFH_partnership.cfm

**III.    The Southwestern Willow Flycatcher**

On February 27, 1995, the United States Fish and Wildlife Service listed the southwestern willow flycatcher ("flycatcher") as endangered under the Endangered Species Act, 16 U.S.C. § 1531. *See* Final Rule Determining Endangered Status for the Southwestern Willow

Flycatcher, 60 Fed.Reg. 10694 (Feb. 27, 1995). The breeding range of the flycatcher encompasses six states including New Mexico. *Id.* Within this region, the species is restricted to dense riparian associations of willow, cottonwood, buttonbush, and other deciduous shrubs and trees. *Id.* A water table close enough to the surface to support riparian vegetation is necessary for the flycatcher to nest. *Id.* According to the Fish and Wildlife Service's findings, the flycatcher is endangered by extensive loss of habitat, livestock grazing in riparian areas, brood parasitism, and lack of adequate protective regulations. *Id.* The flycatcher is pictured here:



*See* http://pubs.usgs.gov/of/2008/1303/ U.S. Geological Survey photograph.

### IV. The Middle Rio Grande

In 1947, Defendant United States Bureau of Reclamation and Defendant United States Army Corps of Engineers completed a comprehensive plan for flood control known as the Middle Rio Grande Project, which Congress authorized in the 1948 and 1950 Flood Control Acts. *See* Flood Control Act of 1948, Pub. L. 80–858, Title II, Section 201 *et seq.*; Flood Control Act of 1950, Pub. L. 81–516, Title II, Section 204. Pursuant to that authorization, Defendant United States Army Corps of Engineers built, maintains, and operates Abiquiu, Cochiti, Galisteo, and Jemez Canyon dams. Plaintiff alleges that the Army Corps of Engineers maintains discretionary control and management authority over the operation of these facilities and has a mandatory obligation to comply with the requirements of the Endangered Species Act. (*Id.*)

Defendant United States Bureau of Reclamation manages water rights and diversion structures on the Middle Rio Grande that are used to divert water out of the Rio Grande and onto the irrigated lands lying within the Middle Rio Grande Conservancy District. (Doc. 66.) Plaintiff alleges that Defendant United States Bureau of Reclamation maintains discretionary control and management authority over the use of those water rights and physical facilities, and has an obligation to comply with the mandatory requirements of the Endangered Species Act. (*Id.*)

### V. Background

In November 1999, Plaintiff filed a lawsuit alleging that Defendants violated their substantive and procedural duties under Section 7(a)(2) of the Endangered Species Act. *See Rio Grande Silvery Minnow, et al. v. Martinez*, No. 99-cv-1320 JP/RHS. Subsequent to the filing of the 1999 lawsuit, the Bureau of Reclamation and the Army Corps of Engineers commenced a Section 7(a)(2) consultation assessing the impacts of their Middle Rio Grande operations on

5

endangered species, which culminated in the United States Fish and Wildlife's Biological Opinion of June 29, 2001.

In July 2001, Plaintiff filed an amended complaint in the *Rio Grande Silvery Minnow* matter alleging that the Bureau of Reclamation and the Army Corps of Engineers should have consulted over actions that these agencies were not proposing to take, but which they allegedly had discretion to undertake for the benefit of the minnow. *See Rio Grande Silvery Minnow*, No. 99-cv-1320 JP/RHS. More specifically, Plaintiff alleged that the Bureau of Reclamation and the Army Corps of Engineers failed to consult over their Middle Rio Grande operations including their decisions (a) not to reduce water deliveries to the Middle Rio Grande Conservancy District, (b) not to utilize the Army Corps of Engineers' discretionary authority over reservoir management, (c) not to use a portion of San Juan-Chama water stored in Heron Lake for the Rio Grande silvery minnow, and (d) not to invoke discretionary clauses of the San Juan-Chama contracts for purposes of reallocating water to the Rio Grande silvery minnow. *See Rio Grande Silvery Minnow*, No. 99-cv-1320 JP/RHS.

Plaintiff sought to compel the Bureau of Reclamation to consult on altering water deliveries and operations under the San Juan-Chama Project and on its ability to deny the Middle Rio Grande Conservation District water that it diverts through these facilities. *See Rio Grande Silvery Minnow*, No. 99-cv-1320 JP/RHS. In addition, Plaintiff sought to compel the Army Corps of Engineers to consult on altering its normal operations to make more water available for the Rio Grande silvery minnow. *Id*.

On April 19, 2002, Judge James A. Parker determined that the Bureau of Reclamation (1) has the discretionary authority to reduce water deliveries to the Middle Rio Grande Conservancy District and (2) had a duty to limit water deliveries to Middle Rio Grande Conservancy District to the amount of water that is beneficially applied to irrigation within the Middle Rio Grande

Conservancy District.  Accordingly, Judge Parker ordered that the Bureau of Reclamation had a duty to broaden the scope of its Section 7(a)(2) consultation with the Fish and Wildlife Service to conform with the scope of its discretionary authority.  *Rio Grande Silvery Minnow v. Keys*, 469 F. Supp. 2d 973 (D.N.M. 2002), *aff'd Rio Grande Silvery Minnow v. Keys*, 333 F.3d 1109 (10th Cir. 2003), and *vacated as moot Rio Grande Silvery Minnow v. Keys*, 355 F.3d 1215 (10th Cir. 2004).

In the same decision, Judge Parker held that the statutes and regulations under which the Army Corps of Engineers' facilities are operated did not give the agency discretion to deviate from its normal operations to benefit the Rio Grande silvery minnow and the agency was not required to consult on such deviations under the Endangered Species Act.  *Rio Grande Silvery Minnow*, 469 F. Supp. 2d at 997–98.  Plaintiff did not appeal Judge Parker's holding that the Army Corps of Engineers lacked discretion to deviate from its normal operations to benefit the Rio Grande silvery minnow.  *See Rio Grande Silvery Minnow*, 601 F.3d at 1107 n.5.

The parties continued the litigation in the district court and the court of appeals.  *See Rio Grande Silvery Minnow*, 601 F.3d at 1106-09 (describing procedural history).  In 2004 and 2005, Congress enacted a series of laws on the applicability of the Endangered Species Act to the Middle Rio Grande.  *See* Pub. L. 108–137, § 208(a); Pub. L. 108–447, § 205, 118 Stat. 2809 (2004); Pub. L. 109–103, § 121(a), 119 Stat. 1705 (2005).  This legislation established that: (1) the Bureau of Reclamation does not have discretion to use San Juan-Chama Project water to benefit the Rio Grande silvery minnow and (2) compliance with the Fish and Wildlife Service's 2003 Biological Opinion satisfied the requirements of the Endangered Species Act until March 16, 2013.  *Id.*  As a result, the Tenth Circuit found all of Plaintiff's claims to be moot, and directed that the underlying decisions should be vacated.  *See Rio Grande Silvery Minnow*, 601 F.3d at 1132–33.

7

The 2003 Biological Opinion covered operations on the Middle Rio Grande through February 28, 2013, and provided that coverage under the Biological Opinion would be extended to cover subsequent consultation, so long as those consultations were initiated prior to February 28, 2013. (Doc. 66.) In order to commence a new Section 7(a)(2) consultation in contemplation of the expiration of the 2003 Biological Opinion, the Bureau of Reclamation submitted a Biological Assessment to the Fish and Wildlife Service concerning the effects of its operations and activities in the Middle Rio Grande on January 16, 2013. (*Id.*) According to Plaintiff, the scope of the Biological Assessment that the Bureau of Reclamation submitted for consultation was impermissibly narrow and the agency disavowed a significant extent of its discretionary authority over water operations and deliveries in the Middle Rio Grande relating to the Middle Rio Grande Project. (*Id.*) The Army Corps of Engineers reinitiated consultation under the 2003 Biological Opinion by submitting biological assessments to the Fish and Wildlife Service. (*Id.*) However, the Army Corps of Engineers withdrew the biological assessments on November 26, 2013. (*Id.*) Accordingly, the Army Corps of Engineers is not currently in Section 7(a)(2) consultation with the Fish and Wildlife Service. (*Id.*)

On December 9, 2014, Plaintiff filed a stipulation and agreement between Plaintiff and the Albuquerque Bernalillo County Water Utility Authority that Plaintiff would dismiss all claims in this action relating to the San Juan-Chama Project, San Juan-Chama Project Water and San Juan-Chama Project Contracts. (Doc. 35.) Plaintiff omitted such claims from the Second Amended Complaint (Doc. 38) and the Third Amended Complaint (Doc. 66).

## VI.     Standard

The Federal Defendants move to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and Rule 12(b)(6). Rule 12(b)(1) provides for dismissal for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "The burden of establishing subject matter

jurisdiction is on the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008). "Rule 12(b)(1) motions generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation omitted).

While Defendants rely on materials outside the pleadings, they present legal arguments rather than a factual challenge. As the motions to dismiss launch facial attacks on this Court's subject matter jurisdiction, the Court will accept the truthfulness of the factual allegations in the Third Amended Complaint and apply the Rule 12(b)(6) standard. *See Dry v. United States*, 235 F.3d 1249, 1253 (10th Cir. 2000) (applying Rule 12(b)(6) standard to Rule 12(b)(1) motion raising legal arguments); *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 364 (1st Cir. 2001) (explaining that Rule 12(b)(6) standard applies to motion challenging sufficiency rather than accuracy of jurisdictional facts).

Rule 12(b)(6) provides that a defense of "failure to state a claim upon which relief can be granted" may be raised by motion to dismiss. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). When applying this standard the court must "accept as true all well-pleaded factual allegations" and view those allegations "in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010).

**VII.    Discussion**

    **A.    Affirmative Agency Action Subject to Section 7 of the ESA**

The Federal Defendants assert that the Section 7(a)(2) claims against Defendant Army Corps of Engineers must be dismissed because Plaintiff has not established that the agency proposed any action with regard to the operations of its facilities on the Middle Rio Grande that trigger the requirements of the Endangered Species Act. Plaintiff responds that the agency's ongoing water control operations at dams and reservoirs on the Middle Rio Grande trigger Section 7(a)(2) obligations because they are affirmative actions which affect listed species and their designated critical habitats.

Under the Endangered Species Act, whenever a federal agency proposes an action in which it has discretion to act for the benefit of an endangered species, it must consult to insure that the action "is not likely to jeopardize the continued existence of any endangered species or threatened species." 16 U.S.C. § 1536(a)(2); *see* 50 C.F.R. § 402.03 (stating that Section 1536 applies "to all actions in which there is discretionary Federal involvement or control."). The acting agency consults with the United States Fish and Wildlife Service if the endangered species is either terrestrial or freshwater. *See id.* § 402.01(b). Agency action is defined as "all activities or programs of any kind authorized, funded, or carried out, in whole or in part, by Federal agencies . . . ." 50 C.F.R. § 402.02.

The Federal Defendants contend that Plaintiff has failed to identify any affirmative agency action by the Corps and, therefore, the Tenth Circuit's decision in *WildEarth Guardians v. U.S. Environmental Protection Agency*, 759 F.3d 1196, 1200 (10th Cir. 2014) requires dismissal of the Section 7(a)(2) claims against the Corps. In *WildEarth Guardians*, the Tenth Circuit held that the Section 7(a)(2) consultation requirement "cannot be invoked by trying to piggyback nonaction on an agency action by claiming that the nonaction is really part of some broader action." *WildEarth Guardians*, 759 F.3d at 1209. "When an agency action has clearly defined boundaries, [the courts] must respect those boundaries and not describe inaction outside those boundaries as merely a component of the agency action." *Id*. Thus, the Tenth Circuit concluded, "requiring consultation on everything the agency might do would hamstring government regulation in general and would likely impede rather than advance environmental protection." *Id.* at 1209. In this case, a review of the Third Amended Complaint reveals that Plaintiff has alleged that the Army Corps of Engineers' Section 7(a)(2) duties are triggered by the affirmative actions that the agency takes in connection with the operation of its Middle Rio Grande dams and reservoirs as explained below. In that Plaintiff has identified affirmative agency actions, the holding in *WildEarth Guardians* does not require dismissal of the Section 7(a)(2) claims against the Corps.

As an example, in the Third Amended Complaint, Plaintiff alleges that Defendant Army Corps of Engineers' "operations and activities in the Middle Rio Grande result in jeopardy to the Rio Grande silvery minnow and the flycatcher, and also result in the adverse modification and/or destruction of the species' designated critical habitats, all in violation of the substantive requirements of . . . Section 7(a)(2)." (Doc. 66.) Additionally, Plaintiff alleges that Defendant United States Army Corps of Engineers "operates and maintains each of its reservoirs and associated facilities pursuant to the operating criteria set forth in [the Flood Control Act of

1960]." (*Id.*) These criteria generally limit the agency's discretion in storage and release of water from the reservoirs. (*Id.*) However, the agency retains some flexibility in its reservoir operations in the Middle Rio Grande. (*Id.*) The Water Control Manuals promulgated by Defendant United States Army Corps of Engineers specifically provide discretionary authority for the agency to "deviate" from normal reservoir operations in certain circumstances. (*Id.*)

Plaintiff avers that Defendant United States Army Corps of Engineers has exercised its authority to deviate from routine reservoir operations in the Middle Rio Grande on several occasions in the past to provide flows downstream of Cochiti Dam to benefit the Rio Grande silvery minnow and the flycatcher. (Doc. 66.) In 2007 and again from 2009–2013, the agency planned to deviate from its water control plan for Cochiti Lake to provide a spawning and/or overbanking peak flows below Cochiti Lake. (*Id.*)

Plaintiff alleges that Defendant United States Army Corps of Engineers modified its operations in 2007 and again in 2010 by storing spring flows in Cochiti for a limited period of time so that a larger peak flow more closely conforming to natural conditions could be released several weeks later. (Doc. 66.) The agency issued environmental assessments in 2007 and 2009 evaluating the effects of the planned deviations. (*Id.*) The 2007 and 2010 deviations resulted in significant benefits to the Rio Grande silvery minnow. (*Id.*) According to these allegations, the agency has had and continues to have discretion in controlling and regulating flows. Taking Plaintiff's allegations as true, the agency may have a duty to consult with the Fish and Wildlife Service about these measures under Section 7(a)(2).

### B. Discretionary Authority Subject to Section 7 and Section 9

The Federal Defendants assert that the Section 7(a)(2) and Section 9 claims against Defendant Army Corps of Engineers must be dismissed because the agency lacks discretion to

deviate from the operations of its facilities on the Middle Rio Grande for the purpose of benefiting endangered species.

In assessing statutory authority and discretion with regard to Endangered Species Act obligations, courts have found that if an agency has any statutory discretion over the action in question, that agency has the authority, and thus the responsibility, to comply with the ESA. *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1213 (9th Cir. 1999) (affirming that water contractors' right to water "[was] subservient to the ESA" because the Bureau of Reclamation had the "authority to direct Dam operations to comply with the ESA" given its retention of Dam management and ownership under those water contracts); *Rio Grande Silvery Minnow v. Keys*, No. 02–2254, 2003 WL 21357246, *14 (10th Cir. June 12, 2003) (observing that the Bureau of Reclamation had "to fulfill its obligations under the ESA" given its "discretion under [water] contracts to determine the 'available water' to allocate."). There is no duty to consult, however, for actions "that an agency is required by statute to undertake." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 669 (2007); 50 C.F.R. § 402.03 (providing that Section 7(a)(2) consultation is only required for proposed agency actions over which "there is discretionary Federal involvement or control").

Under the Flood Control Act, Congress provided that the Corps "shall . . . prescribe for the use of storage water allocated for flood control or navigation at all reservoirs constructed [under this Act] . . . and the operation of any such project shall be in accordance with such regulations." 33 U.S.C. § 709. Thus, it is clear that the Flood Control Act does not deprive the Corps of all discretion in its management of the Middle Rio Grande. Indeed, the "Flood Control Act clearly gives a good deal of discretion" to the Army Corps of Engineers. *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1027 (8th Cir. 2003). "But this discretion is not unconstrained; the Act lays out purposes that the [agency] is to consider . . . ." *Id*. "While flood control and

navigation are dominant functions, the [Flood Control] Act also recognizes recreation and other interests and secondary uses that should be provided for." *Id*. "The text of the Flood Control Act thus sets up a balance between flood control, navigation, recreation, and other interests . . . [and the] Flood Control Act calls on the Corps to balance these various interests." *Id*.

Thus, the Flood Control Act provides the Army Corps of Engineers the discretion to consider its Endangered Species Act obligations as one of the "other interests" to be balanced when making river management decisions. *American Rivers v. U.S. Army Corps of Engineers*, 271 F. Supp. 2d 230, 252 (D.D.C. 2003). Moreover, compliance with the Endangered Species Act can come at the expense of other interests, including navigation and flood control given the Supreme Court's conclusion that the ESA "reveal[ed] a conscious decision by Congress to give endangered species priority over the 'primary missions' of federal agencies." *Id. (citing Tennessee Valley Authority v. Hill*, 437 U.S. 153, 180, 185 (1978).

In the prior lawsuit, Judge Parker determined that the statutes and regulations under which the Army Corps of Engineers' facilities are operated did not give the agency discretion to deviate from its operations at Cochiti Dam and Reservoir to benefit the Rio Grande silvery minnow and the agency was not required to consult on such deviations under the Endangered Species Act. *Rio Grande Silvery Minnow*, 469 F. Supp. 2d at 997–98. However, Plaintiff does not pursue this argument herein. Additionally Judge Parker arrived at this conclusion in the context of the merits of the earlier case rather than on a motion to dismiss in the current matter.

Plaintiff has alleged that Defendant Army Corps of Engineers' ongoing operation of its Middle Rio Grande facilities is an affirmative action that has adverse effects on the Rio Grande silvery minnow and the flycatcher and these actions may be modified for the benefit of listed species within the agency's discretionary action. If proven, these allegations would implicate duties under Section 7(a)(2) and Section 9 of the Endangered Species Act.

## VIII. Conclusion

Plaintiff has sufficiently alleged that Defendant Army Corps of Engineers engages in affirmative actions in connection with the operation of its Middle Rio Grande dams and reservoirs and the agency has sufficient discretionary authority to modify its actions to benefit endangered species.

**THEREFORE,**

**IT IS ORDERED** that the Federal Defendants' Revised Motion to Dismiss Plaintiff's Claims Against the U.S. Army Corps of Engineers, (Doc. 43), is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**