# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**WILDEARTH GUARDIANS**,

    Plaintiff,

v.                                                                                          No. CIV 14-0666 RB/SCY

**UNITED STATES ARMY CORPS
OF ENGINEERS**,

    Federal Defendant,

    and

**MIDDLE RIO GRANDE
CONSERVANCY DISTRICT**,

    Intervenor-Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is the United States Army Corps of Engineers (Corps)'s motion for reconsideration and notice of satisfaction of remand (Doc. 134). For the reasons given below, the Court will deny in part and grant in part Corps's reconsideration motion and amend its previous Opinion accordingly. On remand, Corps has provided sufficient explanation for the remaining activities at issue, so the Court will deny the remainder of plaintiff WildEarth Guardians (Guardians)'s *Olenhouse* motion. Because Guardians has waived its § 9 claim under the Endangered Species Act (ESA), the Court dismisses that claim with prejudice.

## BACKGROUND

A more comprehensive background of this litigation and the legal standards involved is set forth in the Court's previous Memorandum Opinion and Order (Doc. 132). In short, Corps takes various actions in the Middle Rio Grande. (Doc. 132 at 5.) Under § 7 of the ESA, Corps must consult with the United States Fish and Wildlife Service (FWS) for any actions that may

affect endangered species (or their critical habitats) if Corps holds discretion over those actions. (*Id.* at 4.) Corps is not consulting and has argued that it has no obligation under § 7 to consult for any action it is currently taking in the region. (*See* Doc. 124 at 11.)[1]

Guardians, an environmental advocacy organization, appealed Corps's contention that it has no duty under the ESA to consult with the FWS. In its complaint/petition for review (Complaint), Guardians challenged Corps's compliance with §§ 7 and 9 of the ESA. (Doc. 66 at 36–37.) The parties proceeded to create the administrative record and then brief the § 7 issue. In its briefing, Guardians argued that Corps's decision not to consult over its Middle Rio Grande actions is arbitrary and capricious. (Doc. 120 at 55–56.)

In its June 6, 2018 Memorandum Opinion and Order, the Court denied most of Guardians's motion because Corps's rationale—reflected in a memorandum created in 2014 (the 2014 Reassessment)—adequately explained Corps's decision not to consult on most of its actions. (Doc. 132 at 2.) The 2014 Reassessment did not, however, explain Corps's decision not to consult about two maintenance activities: flow reduction to inspect Abiquiu Dam tunnel (Abiquiu tunnel) and flushing of the Jemez Canyon stilling basin (Jemez Canyon basin). The Reassessment noted that Corps has discretion over the flow reduction at Abiquiu and flushing of Jemez Canyon basin, and recommended that Corps consult unless it verifies that those activities have no effect on endangered species. (*See* A.R. 000004 (2014 Reassessment) at 19–20.) There was no evidence in the record that Corps followed the Reassessment's recommendation before deciding not to consult, so the Court reversed Corps's decision not to consult and remanded to Corps for more information. (Doc. 132 at 2.)

Now Corps provides new information and asks the Court to reconsider its previous Opinion.

---

[1] The Court uses CM/ECF's pagination rather than the document's internal pagination.

**DISCUSSION**

**I. Motion for Reconsideration**

"[A] district court always has the inherent power to reconsider its interlocutory rulings." *See Warren v. Am. Bankers Ins.*, 507 F.3d 1239, 1243 (10th Cir. 1992); Fed. R. Civ. P. 54(b) (providing that a Court many reconsider "any order or other decision, however designated, that adjudicates fewer than all the claims. . . ."). The June 6, 2018 Opinion raised, but did not decide, Guardians's § 9 claim because the Court wanted more information before ruling on the claim. (*See* Doc. 132 at 4–5; Doc. 133 (text-only notice of hearing).) The June 6, 2018 Opinion was thus an interlocutory order that the Court can reconsider. As such, the Court turns to Corps's arguments for reconsideration.

<u>Whether maintenance activities were before the Court</u>

Corps first argues that the maintenance activities at Abiquiu tunnel and Jemez Canyon basin were not before the Court. Because inadequately-briefed arguments are waived, *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998), Corps contends that Guardians waived any argument about maintenance activities at Abiquiu tunnel or Jemez Canyon basin by inadequately briefing those activities. (Doc. 134 at 7.) Corps notes that Guardians did not specifically mention the Abiquiu tunnel or Jemez Canyon basin in its intent to sue, Complaint, or opening *Olenhouse* brief. (*See* Doc. 134 at 13–14.)

While Guardians did not use the words "Abiquiu dam tunnel" or "Jemez Canyon dam stilling basin," Guardians's notice of intent to sue indicated that Guardians felt Corps violated § 7 by, among other things, failing to consult on "the ongoing impacts of its *discretionary actions in the middle Rio Grande* . . . ." (Doc. 134-C at 10 (emphasis added).) Guardians's Complaint requested an order requiring Corps "to take *all steps within their discretionary*

*authority* necessary to avoid jeopardy to the silvery minnow and willow flycatcher" and "to complete a comprehensive consultation with the FWS on the effects of the *full range of their discretionary authority* . . . ." (Doc. 66 (Complaint) at 38 (emphasis added).) And Guardians's opening brief not only references Corps's operations in general, but also includes legal citations to support the notion that maintenance activities are fairly in dispute:

> [T]he 1990 [Water Resources Development Act] states that "[t]he Secretary [of the Army] *shall* include environmental protection as one of the primary missions of the Corps of Engineers in planning, designing, constructing, operating, and *maintaining* water resources projects."

(Doc. 120 at 9 (citing 33 U.S.C. § 2316) (emphasis added), 43.) As shown, Guardians's filings at all stages of this litigation contain language that fairly encompasses *all* of Corps's discretionary activities in the Middle Rio Grande—presumably including maintenance activities that involve discretion. And Guardians cites to legal authority to support the notion that maintenance activities are in dispute. This distinguishes this case from every single case Corps cited in its motion for reconsideration—all of which involve omission of arguments from key filings, cursory attempts to incorporate arguments by reference, bald allegations without support, or claims that cannot fairly be inferred from the petition for review. (*See* Doc. 134 at 9–13.)

Guardians's filings were enough to point Corps to the 2014 Reassessment, which is titled, "Reassessment of Proposed Actions for USACE Reservoir Operation in the Middle Rio Grande to Facilitate Compliance with Section 7(a)(2) of the Endangered Species Act." (Doc. 134 at 2 n.1.) In that Reassessment, Corps identified 13 "actions associated with its continuing reservoir operations in the Middle Rio Grande." (*See* 2014 Reassessment at 4.) Those actions included maintenance activities at Abiquiu tunnel and Jemez Canyon basin. (*Id.* at 19–20.) The Reassessment stated that Corps had discretion over how to conduct the aforementioned

4

maintenance, and that the manner in which the maintenance is conducted possibly affects endangered species. (*Id.*)

Essentially, then, Corps makes the brow-raising claim that Guardians's language—"discretionary actions in the middle Rio Grande" (Doc. 134-C at 10), "all steps within their discretionary authority" (Complaint at 38), and "full range of their discretionary authority" (*id.*)—did not give fair notice that Corps's maintenance activities were in dispute, even as the Reassessment labeled those maintenance activities "actions associated with . . . continuing reservoir operations," identified discretionary aspects of those activities, and concluded that those activities potentially could affect endangered species. And rather than seeking clarification to resolve any doubt, Corps simply picked or guessed which actions to address.

The Court finds that the maintenance activities were fairly in dispute and denies Corps's motion to reconsider on this issue.

Reversal and Remand

Corps argues that even if maintenance activities were before the Court, the Court should not have reversed because the Court "did not find fault in the 2014 Reassessment's determinations for [those maintenance] activities . . . ." (Doc. 134 at 7.) Corps adds that if the record did not adequately explain its decision not to consult, the Court should not have "found anything to be 'arbitrary or capricious,'" but instead "should have *only* requested further explanation. (*Id.* at 16 (emphasis added).)

Corps is incorrect to believe that a court must fault an agency's rationale—here, the 2014 Reassessment—to find arbitrariness or reverse. "*In addition* to requiring a reasoned basis for agency action, the 'arbitrary or capricious' standard requires an agency's action to be *supported*

5

*by the facts in the record.*" *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575 (10th Cir. 1994) (emphasis added).

Corps's rationale was fine; what made Corps's decision not to consult arbitrary was the lack of factual support in the record. The Reassessment stated that Corps has discretion in the manner in which maintenance is conducted, and that the manner in which maintenance is conducted could potentially affect endangered species. (*See* 2014 Reassessment at 19–20.) The Reassessment noted Corps's obligation under § 7 to consult for any action that may affect endangered species. (*Id.*) Accordingly, the Reassessment recommended consultation unless Corps could verify that its actions would have no effect on endangered species. (*See id.* at 19 ("If, and only if, subsequent re-analysis of this activity verifies the no-effect determination, it is not subject to ESA consultation.").) The problem was that there was no fact in the record connecting Corps's rationale to Corps's decision not to consult: there was no evidence, for example, that Corps verified that its maintenance activities did not affect endangered species. The missing factual link created an unexplained contradiction between Corps's stated decision and its own internal recommendation, leading the Court to find Corps's decision to be arbitrary and therefore reverse.

Next, the Court turns to Corps's assertion that if the record did not adequately explain Corps's decision, the Court should not have "found anything to be 'arbitrary or capricious,'" but instead "should have *only* requested further explanation from the Corps." (Doc. 134 at 16 (emphasis added).) Tenth Circuit precedent directly contradicts Corps's argument. In *Qwest Corp. v. F.C.C.*, the Tenth Circuit found that an agency acted arbitrarily and therefore reversed when the record did not explain an agency's action:

> The FCC has not provided an adequate basis for us to review the rationality of the Ninth Order. It *has not explained or supported its decisions adequately* and

*therefore has acted arbitrarily* and not in accordance with § 254. We therefore *must reverse* the order and remand for further proceedings.

*Qwest Corp. v. F.C.C.*, 258 F.3d 1191, 1205 (10th Cir. 2001) (emphasis added).

<u>Clarification of Court's intent to withhold Final Judgment on the Merits</u>

In deciding an appeal of an agency's decision, the district court should consider how to most expeditiously resolve the case. *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420–21 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). "If the agency has failed to provide a reasoned explanation for its action, or if limitations in the administrative record make it impossible to conclude the action was the product of reasoned decisionmaking, the reviewing court may supplement the record or remand the case to the agency for further proceedings." *Olenhouse*, 42 F.3d at 1575.

The Court did not simply reverse here, but also remanded to Corps for clarification and explanation. (Doc. 132 at 2.) In doing so, the Court intended the reversal not to be a permanent resolution, but only a stopgap measure until Corps provided more information, at which time the Court would issue a final ruling. *See Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Salazar*, No. 07-CV-00876 JEC/WPL, 2009 WL 8691098, at *3 (D.N.M. May 4, 2009) (showing that a court may consider what an agency should do during the period on remand). Considering the Reassessment's recommendation not to consult "[i]f, *and only if*, subsequent re-analysis . . . verifies the no-effect determination," (*see* 2014 Reassessment at 19 (emphasis added)), the Court reversed Corps's decision not to consult during the period on remand, ensuring that Corps would not take apparently arbitrary actions in the interim while providing Corps its "usual administrative avenue for explaining" apparently arbitrary decisions. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 657 (2007).

Since Corps obviated the need for a temporary instruction by quickly responding to the remand order before taking any maintenance activities at issue, and to prevent later disputes about its intent, the Court will remove references to reversal from its June 6, 2018 Opinion and add language clarifying that it wanted to withhold final judgment on the maintenance activities until Corps provided more information on remand.

**II. Corps's explanation on remand**

Corps's reconsideration motion also included a notice of satisfaction of the Court's remand order. (Doc. 134 at 1.) In its filing, Corps provides the explanation about its maintenance activities that it admits was missing from the administrative record. (*See id.* at 1, 14.)

<u>Abiquiu Dam Tunnel</u>

To maintain Abiquiu tunnel, Corps periodically reduces the flow at Abiquiu for about an hour so personnel can inspect the outlet tunnel. (Doc. 132 at 11.) In its new filing, Corps explains that the flow reduction only affects the habitat of the Southwestern willow flycatcher, not the silvery minnow. (*See* Doc. 134 at 3.) Because the flow reduction is so "slight and temporary," it cannot "measurably alter" the flycatcher's habitat. (*See id.* at 3–4.) As such, the flow reduction to maintain Abiquiu tunnel has no effect on any endangered species or its critical habitat, and Corps does not need to consult over that action. (*Id.* at 4.) Corps supports its explanation by citing the declaration of Ryan P. Gronewold (Doc. 134-A), Chief of Corps's Reservoir Control Branch from 2011–17, and a memorandum produced in June 2014 (Doc. 134-A-1). (Doc. 134 at 3–4.) Neither the declaration nor memorandum was in the administrative record. (*See id.* at 14.)

Guardians concedes that the analysis in Corps's recently-filed memorandum justifies Corps's determination that its maintenance activity at Abiquiu tunnel has no effect on endangered species. (Doc. 136 at 4.) Guardians thus "acknowledges that the Corps has now

satisfied the Court's remand order with respect to maintenance at [Abiquiu tunnel]." (*Id.*) But Guardians resists amending the Court's previous Opinion to fix Corps's mistake: "[t]he Corps may not now pad the Administrative Record, and argue that the Court would have ruled differently if the Corps had produced a different Administrative Record . . . ." (*Id.* at 4–5.)

Despite the appeal of insisting that Corps live with the record it created, the fact remains that forcing Corps to consult about an action that undisputedly has no effect on endangered species would be a waste of time. And in this case, the Court had the authority to ask for more information to expeditiously resolve the case, *see, e.g.*, *Citizens to Pres. Overton Park*, 401 U.S. at 420–21, and did ask for more information about the flow reduction at Abiquiu tunnel, (*see* Doc. 132 at 2). The Court will thus consider Corps's additional information in deciding whether Corps arbitrarily chose not to consult about maintenance at Abiquiu tunnel.

The newly-produced June 2014 memorandum—which Guardians agrees satisfies the Court's remand order—shows Corps verified that flow reduction at Abiquiu dam does not affect endangered species. (*See* Doc. 134-A-1 at 1–3.) The memorandum thus provides the previously-missing factual support connecting Corps's rationale in its Reassessment to its decision on consultation. Accordingly, Corps's decision not to consult is neither arbitrary nor capricious, and the Court denies Guardians's *Olenhouse* motion as to the flow reduction at Abiquiu tunnel.

<u>Jemez Canyon Dam Stilling Basin</u>

To maintain Jemez Canyon basin, Corps flushes excess sediment from the basin by detaining inflow at Jemez Canyon for up to four or five days before releasing the detained water to rinse the basin. (Doc. 132 at 11.) In its new filing, Corps adds that Jemez Canyon has not held a pool since 2001, so less sediment has accumulated at the basin, eliminating the need for the flushing operation. (Doc. 134 at 4.) Corps contends that since the flushing operation has not been

9

necessary and "is not anticipated in the foreseeable future," it "has not had an occasion to reevaluate potential effects" of the operation and is not currently consulting over its inaction. (*See id.* at 4–5.) Corps again cites Mr. Gronewold's declaration to support the veracity of the new information. (*See id.*)

Guardians does not try to disprove Mr. Gronewold's assertion that the flushing operation has not been conducted for years; rather, Guardians repeats its objection that the new information should not be considered as it was not a part of the original record. (Doc. 136 at 7.) Guardians also suggests that Mr. Gronewold's declaration alone, "without the creation of any sort of record or decision document," is insufficient to satisfy the Court's remand order. (*See id.* at 6–7.)

Like it did for the issue of flow reduction at Abiquiu tunnel, the Court will consider the new information about the flushing operation at Jemez Canyon basin. Because the Court had the authority to ask for more information, and did ask for more information, the Court can consider the additional information Corps provided on remand. As to Guardians's suggestion that Mr. Gronewold's declaration is insufficient to satisfy a remand order, the Court notes that sworn statements can be an appropriate way for an agency to supply additional information to a court. *See Camp v. Pitts*, 411 U.S. 138, 142–43 (1973) ("If . . . there was such failure to explain administrative action as to frustrate effective judicial review, the remedy was . . . to obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary.") Considering the nature of the new information—that Corps has not conducted a flushing operation for years, rather than a highly-technical conclusion—the Court believes the declaration will suffice. An official agency document is unnecessary because sending Corps on the wheel-spinning exercise of rewriting the same information on its letterhead would result in nothing but delay. *See Bankers Tr. Co. v. Mallis*,

435 U.S. 381, 385 (1978) (waiving separate-document requirement where "nothing but delay" would result and "[w]heels would spin for no practical purpose").

Mr. Gronewold's declaration provides the missing factual support for Corps's decision. It asserts that Corps has not conducted the flushing operation in years, and has no plan to do so. (Doc. 134-A at 3.) Since Corps only needs to consult on affirmatively planned actions, (*see* Doc. 132 at 29–31), and since the flushing operation is presently unnecessary, Corps's decision not to consult on maintenance of Jemez Canyon basin is not arbitrary or capricious. Accordingly, the Court denies Guardians's *Olenhouse* motion as to the flushing of Jemez Canyon basin.

### III. Guardians's Section 9 Claim.

Guardians asserted a § 9 claim in its Complaint, (Complaint at 37), but did not press the claim in its *Olenhouse* opening brief. Guardians informed the Court at a hearing that it deliberately chose not to pursue the § 9 claim. As such, the Court rules that Guardians has waived its § 9 claim.

### CONCLUSION

For the reasons stated, the Court **grants in part and denies in part** Corps's motion for reconsideration (Doc. 134). The Court will amend its previous Opinion to make clearer its intent to withhold final judgment on the maintenance activities until provided more information on remand. With the new information on remand, the Court **denies** Guardians's *Olenhouse* motion as to the flow reduction at Abiquiu tunnel and the flushing of Jemez Canyon basin. The Court **dismisses** Guardians's § 9 claim with prejudice.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE